HOLLAND & KNIGHT LLP
Michael J. Frevola
787 Seventh Avenue
New York, New York 10019
michael.frevola@hklaw.com
Tel : 212.513.3200
Fax: 212.385.9010
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MINERVA BUNKERING PTE LTD.,<br>Plaintiff,<br>v.<br>ASHFAQUE J. RAHMAN and MAHWEEN RAHMAN,<br>Defendants. | In Admiralty<br>Case No.: 1:26-cv-06789-VEC<br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

I. COUNT I FAILS TO STATE A CLAIM FOR ALTER-EGO LIABILITY UNDER SINGAPORE LAW. .......... 3

II. EVEN ASSUMING THAT U.S. LAW WAS TO APPLY TO THIS DISPUTE, COUNT I FAILS TO STATE A CLAIM FOR ALTER-EGO LIABILITY UNDER FEDERAL MARITIME COMMON LAW. .......... 5

A. The Legal Standard for Veil-Piercing Is Demanding and Is Not Met Here. .......... 5

B. The Complaint's Domination Allegations Are Conclusory. .......... 6

C. The Complaint Fails to Plausibly Allege Fraud or Wrong Directed at Minerva. .......... 7

D. The Allegations Regarding Mahween Rahman Are Legally Insufficient. .......... 8

III. COUNT II FAILS TO STATE A CLAIM FOR RECOGNITION OF THE ENGLISH JUDGMENT AGAINST THESE DEFENDANTS. .......... 9

IV. COUNT III FOR DECLARATORY JUDGMENT IS DUPLICATIVE AND INDEPENDENTLY FAILS. .......... 11

V. LEAVE TO AMEND SHOULD BE DENIED. .......... 11

CONCLUSION .......... 12

## TABLE OF AUTHORITIES

**Cases**

*AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*,
160 A.D.3d 93, 73 N.Y.S.3d 1 (1st Dep't 2018) ....................13

*Archawski v. Hanioti*,
239 F.2d 806 (2d Cir. 1956) ....................10

*Arista Records LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) ....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*Blue Whale Corp. v. Grand China Shipping Dev. Co.*,
722 F.3d 488 (2d Cir. 2013) ....................6

*Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*,
851 F. Supp. 2d 504 (S.D.N.Y. 2012) ....................8

*Foman v. Davis*,
371 U.S. 178 (1962) ....................14

*Golden Horn Shipping Co. v. Volans Shipping Co.*,
No. 14-CV-2168 (JPO), 2017 WL 3535002 (S.D.N.Y. Aug. 16, 2017) ....................6, 7

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
457 F. Supp. 2d 455 (S.D.N.Y. 2006) ....................14

*Kirno Hill Corp. v. Holt*,
618 F.2d 982 (2d Cir. 1980) ....................8

*Koehler v. Bank of Bermuda Ltd.*,
12 N.Y.3d 533 (2009) ....................14

*Lauritzen v. Larsen*,
345 U.S. 571 (1953) ........ 6

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ........ 9, 11

*Platina Bulk Carriers Pte Ltd v. Praxis Energy Agents DMCC*, No. 20 Civ. 4892 (NRB), 2024 WL 1194778 (S.D.N.Y. Mar. 20, 2024) ........ 8

*Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*,
933 F.2d 131 (2d Cir. 1991) ........ 8

**Statutes**

Fed. R. Civ. P. 12(b)(6) ........ 5

N.Y. C.P.L.R. § 5303(a) ........ 12

**Other Authorities**

Richard C. Reilly, *Supplemental Practice Commentaries*, C5303:3 ........ 13

Stephen Bull, *Piercing the Corporate Veil – In England and Singapore*, [2014] Sing. J. Legal Stud. 24 ........ 7

**Rules**

Fed. R. Civ. P. 15(a) ........ 14

N.Y. C.P.L.R. art. 53 ........ 4, 12, 13

Defendants Ashfaque J. Rahman ("A.J. Rahman") and Mahween Rahman (together, "Defendants"), by and through their attorneys Holland & Knight LLP, files this Memorandum of Law in Support of the Motion to Dismiss the Complaint filed by Minerva Bunkering Pte Ltd. ("Minerva") on the grounds stated below.

## PRELIMINARY STATEMENT

Minerva filed this action against two individuals – A.J. Rahman and Mahween Rahman – seeking to hold them personally liable for alleged corporate debts of Norvic Shipping Asia Pte Ltd. and Norvic Maritime Holdings Inc. (collectively, "Norvic"). Minerva's Complaint (Doc. #1) ("Complaint" or "Compl.") fails to state a claim as a matter of law and should be dismissed.

Minerva's theory rests on the extraordinary remedy of piercing the corporate veil – a remedy courts apply sparingly and only upon a demanding factual showing. Yet the Complaint offers little more than conclusory allegations, information-and-belief assertions, and inferences stacked upon inferences. With respect to the first court, the Complaint does not plausibly allege the complete domination and fraud or wrong required to disregard the corporate form under the general maritime law. With respect to the second count, Minerva's foreign judgment recognition count fails because the English judgment was rendered against a corporate entity – not against these individual Defendants – and the judgment recognition process under N.Y. C.P.L.R. Article 53 provides no mechanism to extend a foreign judgment to non-judgment debtors through alter-ego theory at the pleading stage. With respect to the third count, the declaratory judgment relief sought is entirely duplicative of Count I and independently fails to state a claim.

For these reasons, the Complaint should be dismissed with prejudice.

## BACKGROUND

The following facts are recited in the Complaint (except where otherwise identified) and accepted only for use in this motion.

Minerva is a Singapore-registered marine fuel supplier. Compl.. ¶ 12. It delivered 498.528 metric tons of VLSFO to the *M/V ALEXANDRIS* in October 2025 pursuant to a supply contract with Norvic Shipping Asia Pte Ltd. (also a Singapore-registered entity) and then issued an invoice to Norvic Shipping Asia Pte Ltd. in the amount of $230,040.26. *Id.* ¶¶ 1. 2, 44-46. While the Complaint is silent on the issue, the *M/V ALEXANDRIS* bunkering was arranged through employees of Norvic Shipping Asia Pte Ltd. without any participation from other Norvic entities; stated another way, the transaction was between two Singapore entities. Norvic Maritime Holdings Inc.. a separate Ontario corporation, had issued a payment guarantee to Minerva. *Id.* ¶¶ 3, 24, 49-50. When neither the invoice nor the guarantee was honored, Minerva obtained a judgment in the High Court of Justice of England and Wales against Norvic Maritime Holdings Inc. in the amount of USD 230,040.26 plus interest and costs – totaling at least $288,133.58 as of June 25, 2026. *Id.* ¶¶ 52-53, 55.

Notably, the Complaint contains not one allegation of actions taken by the Defendants that misrepresented anything to Minerva to induce Minerva to act to provide the bunkers at issue. Nevertheless, Minerva now seeks to hold A.J. Rahman and Mahween Rahman – individuals who are not parties to any contract with Minerva and are not named in the English Judgment – personally liable for the entire judgment debt on an alter-ego theory. *Id.* ¶¶ 10, 86-87.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678-79. Allegations made "on information and belief" must still be grounded in sufficient factual context to raise a plausible – not merely conceivable – inference of liability. *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Minerva's claims – almost all of which are "supported" by either formulaic recitations of the elements of a veil-piercing claim or assertions of "fact" based upon information and belief – fail to satisfy the threshold inquiry set forth by the Supreme Court in *Twombly* and *Iqbal*. Hence, Defendants' motion should be granted and Minerva's claims should be dismissed.

## ARGUMENT

### I. COUNT I FAILS TO STATE A CLAIM FOR ALTER-EGO LIABILITY UNDER SINGAPORE LAW.

In *Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488 (2d Cir. 2013), the Second Circuit made clear that maritime veil-piercing cases are to apply the *Lauritzen* maritime conflicts-of-law analysis to determine the applicable law by which a veil-piercing claim should be assessed. *See id.* at 498-500 (applying maritime conflicts of law analysis first announced by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), to analyze appropriate veil-piercing law to apply to parties' dispute). While frequently a dispute between maritime parties has a scattershot grouping of connections such that a court will default to U.S. maritime law as the appropriate veil-piercing standard, where parties to a dispute have a common nexus in a foreign country the application of that foreign country's veil-piercing laws may be appropriate. For example, in *Golden Horn Shipping Co. v. Volans Shipping Co.*, Case No. 14-CV-2168 (JPO), 2017 WL 3535002 (S.D.N.Y. Aug. 16, 2017), the district court – in granting the defendant's motion to dismiss on *forum non conveniens* grounds – cited the *Blue Whale* decision in opining that the

nucleus of operative facts likely made the application of Latvian veil-piercing law (not U.S. law) appropriate. *See id.* at *6-7.

Here, with both the supplier and purchaser of the bunkers in question being Singapore, this Court should apply Singapore law to analyze the question of veil-piercing. A Singapore appellate court decision from last decade described the veil-piercing test as follows:

> While there is as yet no single test to determine whether the corporate veil should be pierced in any particular case, there are, in general, two justifications for doing so at common law – first, where the evidence shows that the company is not ***in fact*** a separate entity; and second, where the corporate form has been abused to further an improper purpose . . .

Stephen Bull, *Piercing the Corporate Veil – In England and Singapore*, Singapore Journal of Legal Studies, 24, 35 [2014] (quoting *Alwie Handoyo v. Tjong Very Sumito*, [2013] 4 S.L.R. 308 (C.A.)) (emphasis in original). A commentator on Singapore law has described the Singapore veil-piercing standard as follows:

> On this basis it appears that the alter ego ground is essentially founded on the ***factual indistinctness*** between controller and company, whereas "sham or façade" relates to ***improper use*** of the company by the controller.

*Id.* at 36 (emphasis in original).

With respect to the bunkering transaction at issue, the Complaint does not allege that Norvic Shipping Asia Pte Ltd. was not a factually indistinct entity from the Rahmans. Nor does the Complaint allege that Norvic Shipping Asia Pte Ltd. was improperly used to purchase the bunkers. Rather, the Complaint generally describes a corporate family which experienced financial difficulties that ultimately led to an inability by the companies to pay their debts.[1] This does not amount to a veil-piercing claim under Singapore law.

[1] Indeed, while this fact will be proven in discovery, the Norvic group of companies purchased over $132 million in bunkers from Minerva's companies over the 5-year period between 2021 and 2026 with an average payment time of 23.48 days against 30-day credit terms. This hardly suggests improper use of the corporate form.

## II. EVEN ASSUMING THAT U.S. LAW WAS TO APPLY TO THIS DISPUTE, COUNT I FAILS TO STATE A CLAIM FOR ALTER-EGO LIABILITY UNDER FEDERAL MARITIME COMMON LAW.

### A. The Legal Standard for Veil-Piercing Is Demanding and Is Not Met Here.

Federal maritime common law permits the corporate form to be disregarded only where a plaintiff establishes two elements: (1) that the owner or controller exercised complete domination over the corporation with respect to the transaction at issue, and (2) that such domination was used to commit a fraud or wrong against the plaintiff that caused injury. *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980); *Platina Bulk Carriers Pte Ltd v. Praxis Energy Agents DMCC*, 20 Civ. 4892 (NRB), 2024 WL 1194778, at *4 (S.D.N.Y. Mar. 20, 2024) (citing *Status Int'l S.A. v. M & D Maritime Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (citing *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir. 1986))). Veil-piercing is an exceptional remedy that cannot be applied merely because a company fails financially: "[u]nder federal common law, courts are reluctant to pierce a corporate veil and impose liability on a separate, related entity, but may do so under extraordinary circumstances." *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504, 509 (S.D.N.Y. 2012). Closely-held ownership of a corporate entity "does not alone justify piercing the corporate veil . . .; indeed, individuals may incorporate for the very purpose of avoiding personal liability." *Kirno Hill*, 618 F.2d at 985 (citing *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 21 (2d Cir. 1976) and *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)). Mere majority ownership, management involvement, or shared personnel among affiliated companies also is insufficient to pierce the corporate veil. *Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138-39 (2d Cir. 1991). There must be a showing that the corporate form itself was used as a vehicle for fraud or injustice directed at the plaintiff. *Id.*

**B. The Complaint's Domination Allegations Are Conclusory.**

The core domination allegation – that "A.J. Rahman exercised complete domination over Norvic's ownership, strategy, credit decisions, treasury, intercompany transfers, asset dispositions, and responses to creditors," Compl., ¶ 64 – is precisely the type of conclusory recitation prohibited by *Twombly* and *Iqbal*. It tracks the legal standard verbatim without providing supporting factual detail. The remaining allegations purporting to support domination are similarly infirm:

- The allegation that Norvic entities shared "common branding, common senior management, common personnel, common offices, common communications, and centralized financial control," *id.* ¶ 25, describes ordinary features of a multinational corporate group, not domination rising to alter-ego status.
- The allegation that A.J. Rahman "publicly described himself as Norvic's founder, Chairman, and Group Chief Executive Officer" and is identified in corporate records as a manager or director of certain entities, *id.* ¶¶ 4, 18, establishes, at most, that he held senior corporate roles – not that he obliterated corporate separateness.
- The allegations regarding Mahween Rahman are even more attenuated. The Complaint alleges on "information and belief" that she "participated in and benefited from the ownership, control, management, financing, asset holding, and disposition of the Norvic enterprise and related family-controlled entities," *id.* ¶ 21, and that the "precise details of her ownership interests, authority, access to accounts, and receipt of transfers are peculiarly within Defendants' knowledge and will be established through discovery." *Id.* This is a frank admission that Minerva lacks the factual basis to plead her involvement and is instead using this lawsuit as a vehicle to obtain discovery. That is insufficient to survive a motion

to dismiss. *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013).

**C. The Complaint Fails to Plausibly Allege Fraud or Wrong Directed at Minerva.**

Even if domination were adequately pled – which it is not – the Complaint fails to plausibly allege that such domination was used to commit a fraud or wrong against Minerva specifically.

The primary "wrong" alleged is that the Rahmans caused Norvic to: (a) trade while insolvent; (b) make payment promises to delay enforcement; and (c) transfer operating assets to United Overseas Trading and related entities in early 2026. Compl., ¶¶ 71-79. None of these allegations, even taken as true, constitutes the kind of fraud or wrong necessary to pierce the veil.

*First*, trading while insolvent, without more, does not constitute fraud under federal maritime law. *Archawski v. Hanioti*, 239 F.2d 806, 811-12 (2d Cir. 1956) (emphasis added). Corporations regularly operate and incur obligations while experiencing financial difficulty. Minerva does not allege that it had any knowledge of Norvic's financial condition at the time of the October 2025 transaction, or that it was induced to extend credit by any affirmative misrepresentation from the Rahmans personally.

*Second*, the allegation that Norvic made "payment promises that delayed enforcement," Compl., ¶ 72, does not identify a single specific promise made by the Rahmans individually, as opposed to corporate representatives acting in their ordinary capacity.

*Third*, with respect to the ***claimed*** February 2026 "asset sale" to United Overseas Trading, Compl., ¶¶ 30-35, the Complaint acknowledges that this was a publicly announced commercial transaction involving an arm's-length third party, United Overseas Group. Compl., ¶ 30. A commercially negotiated sale of operating subsidiaries, even if it left Norvic's creditor-exposed entities undercapitalized, does not automatically constitute a fraudulent transfer or a wrong

sufficient to pierce the veil – particularly where, as here, the Complaint fails to allege the consideration paid, the solvency status of the transferee entities at the time of the sale, or any facts showing that the Rahmans personally received or retained the proceeds.[2]

**D. The Allegations Regarding Mahween Rahman Are Legally Insufficient.**

As to Mahween Rahman specifically, the Complaint's allegations are particularly deficient. While she is correctly identified as A.J. Rahman's spouse, Compl., ¶ 19, little else alleged regarding Mahween Rahman has either substance or accuracy. She is alleged to be associated with Norvic through "[p]ublicly available business-network information," *id.* ¶ 20, and is identified as a manager of RDG Florida LLC, a separate family-controlled entity, *id.*, yet neither allegation provides the supports for these allegations (or, more importantly, why those allegations – even if accurate – are relevant). The Complaint then pleads, entirely on information and belief, that she "participated in and benefited from" the Norvic enterprise. *Id.* ¶ 21.

This information and belief allegation of participation in and benefitting from an enterprise is precisely the type of formulaic pleading that *Twombly* and *Iqbal* were decided so as to filter out complaints devoid of actual substance. While Minerva assures the Court that discovery will sort out Mahween Rahman's role in the Norvic enterprise, the law is clear that a plaintiff cannot use completely unsupported allegation as the basis for a discovery fishing expedition in the hope of discovering some possible connection between the allegations and the defendant. As the Second Circuit noted in its *Pension Benefit Guaranty Corp.* decision in quoting the U.S. Supreme Court, the liberal pleading allowed under Federal Rule 8 "***does not unlock the doors of discovery for a***

---

[2] While this application is a motion to dismiss and thus the plaintiff's allegations are to be construed as true, in point of fact Minerva's recitation of the United Overseas transaction is inaccurate. As will be borne out later in these proceedings should it become necessary, the Norvic/United Overseas transaction served to sever future Norvic financial obligations by shedding remaining periods of already-existing vessel charters (in which charters Norvic was the charterer and the obligor to pay charter hire installments to the vessels' owners) and associated operating obligations – which obligations were picked up by United Overseas – so as to allow Norvic to rid itself of financial obligations that were making Norvic's financial condition more precarious with every passing day.

***plaintiff armed with nothing more than conclusions.*"** *Id.* (quoting *Iqbal*, 556 U.S. at 678-79) (emphasis added). While A.J. Rahman at least is an officer and/or principal of some companies in the Norvic group of companies (and thus facially there could be ***some*** claim asserted against him related to these roles, even if that claim is utterly specious), there literally is not one single fact alleged in the Complaint that ties Mahween Rahman to ***any*** of the claimed Norvic conduct, yet Minerva improperly has included her in this proceeding as a defendant.

Spousal association with a principal of an alleged debtor is not a basis for personal liability. Nor is association with a family-controlled entity that shares an address with Norvic. The Complaint contains not one single specific factual allegation that Mahween Rahman took any action in connection with the Minerva transaction, the payment guarantee, the English Judgment, or the 2026 asset sale. Naming her as a defendant based on her marriage and her membership in a separate LLC, without more, does not state a plausible claim for alter-ego liability. Even if the claims against A.J. Rahman were permitted to survive the threshold inquiry presented by a motion to dismiss, the claims against Mahween Rahman should be dismissed.

## III. COUNT II FAILS TO STATE A CLAIM FOR RECOGNITION OF THE ENGLISH JUDGMENT AGAINST THESE DEFENDANTS.

Count II seeks recognition of the English Judgment against the Defendants under N.Y. C.P.L.R. Article 53. This claim fails for a straightforward reason: the English Judgment was rendered against Norvic Maritime Holdings Inc., *see* Compl., ¶ 53 – not against the Defendants (who are individuals).

N.Y. C.P.L.R. Article 53 governs recognition and enforcement of foreign country money judgments. It authorizes a New York court to recognize and enforce a foreign judgment "as conclusive ***between the parties*** [in the foreign proceeding]." N.Y. C.P.L.R. § 5303(a) (emphasis added). The Defendants were not parties to the English proceeding in which the English Judgment

was issued. There is no provision in Article 53 that permits a court to extend a foreign judgment to non-parties through alter-ego or veil-piercing theory. For Minerva to employ N.Y. C.P.L.R. Article 53 in an effort to proceed against the Defendants, it would have (1) get the English Judgment recognized by this Court against Norvic Maritime Holdings Inc. (i.e., the actual party in that English proceeding), and (2) ***then*** proceed against the Defendants under the alter ego and/or veil-piercing liability claims. The problem with proceeding in this fashion, however, is that Norvic Maritime Holdings Inc. is not subject to *in personam* jurisdiction in this Court as it is a company incorporated in Ontario, Canada, Compl., ¶ 24, and Minerva cites no property of Norvic maritime Holdings Inc. that is present within the jurisdiction of this Court. As this Court lacks both *in personam* and *in rem* jurisdiction over Norvic Maritime Holdings, Inc., Minerva's count based on Article 53's recognition and enforcement mechanisms is jurisdictionally defective. *See* Richard C. Reilly, *Supplemental Practice Commentaries*, C5303:3 ("Recognition Without Personal Jurisdiction Over The Judgment Debtor In New York"), N.Y. C.P.L.R. § 5303 (2018) (referencing the 2018 First Department decision in *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 73 N.Y.S.3d 1, 1, 160 A.D.3d 93, 94 (1st Dep't 2018) (stating that in a proceeding to recognize and enforce a foreign country judgment, "there must be either an *in personam* or *in rem* jurisdictional basis for maintaining the recognition and enforcement proceedings against the defendants in New York."))

Therefore, to the extent that Minerva might seek to use N.Y. C.P.L.R. Article 53 to properly target Norvic Maritime Holdings Inc. as a defendant in a judgment recognition and enforcement proceeding, that effort should fail as this Court lacks both *in personam* and *in rem* jurisdiction over Norvic Maritime Holdings Inc. To the extent that Minerva seeks to use Count II as a vehicle to hold the Rahmans liable on the basis that they are alter egos of Norvic Maritime Holdings Inc., that theory collapses into Count I and fails for the same reasons discussed above. A stand-alone

claim for foreign judgment recognition against non-judgment-debtors does not lie under New York's judgment enforcement mechanisms. *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 537-41 (2009) (Article 52 post-judgment asset seizure enforcement procedures operate against the ***judgment debtor's*** property). Accordingly, Count II should be dismissed.

## IV. COUNT III FOR DECLARATORY JUDGMENT IS DUPLICATIVE AND INDEPENDENTLY FAILS.

Count III seeks a declaration under 28 U.S.C. §§ 2201-2202 that "Norvic was and is the alter ego of the Rahmans" and that the Rahmans are jointly and severally liable for all amounts Norvic owes Minerva. Compl., ¶ 97.

This count is entirely duplicative of Count I. Where a declaratory judgment claim seeks the same relief as a substantive claim already pleaded, courts in this Circuit routinely dismiss the declaratory judgment count as redundant. *See, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 466 (S.D.N.Y. 2006). The declaration sought here would add nothing to the relief already requested in Count I. If Count I is dismissed, Count III fails with it. If Count I were to survive, Count III is superfluous. Hence, Count III should be dismissed.

## V. LEAVE TO AMEND SHOULD BE DENIED.

Although leave to amend is ordinarily freely given under Fed. R. Civ. P. 15(a), it may be denied where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, the deficiencies in the Complaint are not merely technical. The allegations regarding Mahween Rahman are so thin as to suggest that no additional facts exist to support her inclusion as a defendant. The core theory of the case – that corporate officers of a multinational shipping group are personally liable for their companies' debts merely because the enterprise ultimately failed and assets were sold – legally is insufficient regardless of how it is pleaded. Accordingly, leave to

amend should be denied, or at minimum held in abeyance pending the Court's assessment of the legal viability of the claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety pursuant to Rule 12 of the Federal Rules of Civil Procedure, with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 28, 2026

HOLLAND & KNIGHT LLP

*s/ Michael J. Frevola*
Michael J. Frevola
787 Seventh Avenue
New York, New York 10019
michael.frevola@hklaw.com
Telephone: 212.513.3200
Fax: 212.385.9010

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE WITH INDIVIDUAL PRACTICES RULE 4(B)

1. This brief complies with Rule 4(B)(i) of the Individual Practice Rules of U.S. District Judge Valerie Caproni because:

this brief contains 3,599 words, excluding the case caption, signature block and this certification, as calculated by the word-processing program used by the undersigned.

2. This brief complies with the typeface requirements of Rule 4(B)(ii) of the Individual Practice Rules of U.S. District Judge Valerie Caproni because:

this brief has been prepared with one-inch margins, is double-spaced, and all text is printed in Times New Roman, 12 point font (except footnotes in the permitted smaller 10-point font).

Dated: August 28, 2026
New York, New York

Respectfully submitted,

*s/ Michael J. Frevola*

Michael J. Frevola
HOLLAND & KNIGHT LLP
787 Seventh Avenue, 31st Floor
New York, New York 10019
Tel: (212) 513-3516
michael.frevola@hklaw.com